FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2002 MAR 14  PM 12: 14
LORETTA G. WHYTE
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MERLIN S. McCORMICK | |
| Plaintiff, | |
| V. | CIVIL ACTION FILE NO. **02-0767** |
| LOUISIANA SCHOOL UNIVERSITY MEDICAL CENTER OF LOUISIANA AT NEW ORLEANS, STATE OF LOUISIANA, LOUISIANA HEALTH CARE AUTHORITY, THROUGH THE GOVERNOR MIKE FORSTER AND DARRYL BOUDREAUX | **SECT. R MAG. 4** **JURY DEMAND** |
| Defendant(s) | |

**********************************

## COMPLAINT AND JURY DEMAND

I. Introductory Statement

1.   Plaintiff, an African-American, seeks redress for discrimination/retaliation on account of race suffered by him in violation of the constitution and laws of the United States in his capacity as an employee of LSU MEDICAL CENTER AT NEW ORLEANS. . Plaintiff, a electrician, alleges that he was required to work in a place and under conditions where bias and prejudice against members of his race, and color existed on the part of his co-workers and his superiors.  Because of this discriminatory atmosphere, the fact remains that he was treated differently as compared to white employees regarding assignment, disciplinary actions, and promotions.  Plaintiff seeks general and special damages, compensatory and punitive damages resulting from a series of harassment and injunctive relief requiring Defendant to eliminate the discriminatory conditions which exist against black

persons, and seeks damages for pain and suffering.

## II. JURISDICTION AND VENUE

2.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1343; Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000 (e), et seq., as amended; 42 U.S.C. Section 1983 et. seq.  The unlawful employment practices and discrimination alleged were and are being committed within the U.S. District for the Eastern District of Louisiana.

3.   This action is brought and jurisdiction lies pursuant to 42 U.S.C. Section 2000e-5.  This is an action brought by plaintiff to enjoin the Defendant(s)' racially discriminatory practices as prohibited by 42 U.S.C. section 1981 et. seq., as well as the United States Constitution, Fourteenth amendment, and for damages which exceed $100000.00.  Venue lies in this District pursuant to 42 U.S.C. Sect. 2000e-5(f)(3).

This Court has jurisdiction of this cause of action under 28 U.S.C. 1343, 28 U.S.C. 1331, 43 U.S.C. 2000-e, et seq., and the fourteenth amendment to the United States Constitution.

## III. PARTIES

4.   Plaintiff, MERLIN S. McCORMICK, is an African American--Black citizen of the United States and a resident of the City of New Orleans, within the jurisdiction of the District Court for the Eastern District of Louisiana. Plaintiff, Merlin S. McCormick, an African American resident of the State of Louisiana, filed a charge of discrimination/retaliation against defendant Medical Center of Louisiana with the Equal Employment Opportunity Commission (EEOC) complaining of the acts of race

discrimination/retaliation alleged herein. Plaintiff has attached hereto a copy of a right-to-sue letter. Plaintiff reserves the right to amend this petition because there are other persons who has voice filing a class action as pursuant to Rule 23 of the Federal Rules of Civil Procedure.

5. Defendant, **MEDICAL CENTER OF LOUISIANA AT NEW ORLEANS**, who at all times relevant herein, is authorized to do and doing business in the State of Louisiana, city of New Orleans. Defendant has ties to the forum state. Defendant negligently supervisor its employee/supervisors by allowing and condoning race discrimination and retaliation to be done against plaintiff.

6. Defendant, **LOUISIANA STATE UNIVERSITY MEDICAL CENTER** the appointed authority, domiciled in the Parish of Orleans, and at all times mentioned herein was appellant's employer.

7. Defendant, Darryl Boudreaux, plaintiff supervisor inflicted severe emotionally distress on plaintiff.

IV. CAUSE OF ACTION

8. Plaintiff is a regular classified/permanent State of Louisiana Civil Servant. Plaintiff is currently employed by the LSU Medical Center as an Electrician.

9 Plaintiff is an exemplary employee and appellant received several letters from other employees praising his work ethics.

10. Plaintiff's work performance regarding accuracy and completion of the job was very good and exceeded requirement.

11.	Plaintiff states specifically that statistically, the appointing authority treats White employees better than Black/African-American employees in the areas of promotion, transfers, job assignments, disciplinary action and equal pay.

12.	Plaintiff states that specifically defendants treating White employees better than Blacks employees, and these statistic gives rise to an inference of discrimination and retaliation and indicates discriminatory intent.

13.	Noticing that defendants treated certain individual differently than he and members of his race, plaintiff voiced his concerns about ways in which the efficiency of the operation could be improved. Plaintiff and other members of his class and defendants' employees sought a class action suit against LSUMC.

14.	Plaintiff and other Black employees sought resolution of these problems through the grievance process and the Union Local 1991, but were unsuccessful.

15.	Thereafter, plaintiff proceeded to perform his duty, during which time, plaintiff's work environment became hostile and progressively worse.

16.	Plaintiff asserts that the defendants through a series of harassments and a pattern of reprisals, created a hostile racial working environment so intolerable that a reasonable person subjected to the harassment would resign. (Constructive Discharge Policy).

17.    Plaintiff attempted to work in a professional manner and tried to ignore the harassments.  However, on September 13, 2001, the defendants gave plaintiff a three-day suspension for allegedly taking an unauthorized break and being absent from appellant's assigned work area that allegedly happened on July 27, 2001.

18.    Plaintiff stated that he was not taking an unauthorized break and Mr. Darryl Keeter did not assign Mr. McCormick to another work area.  He waited for a further assignment.  At the end of the work day, appellant returned the work order to Mr. Keeter for the Lions Center -leaving plaintiff with no other assignments for the day.  Mr. Keeter was on the phone.  He went to locate and obtain equipment and instruments signed out in appellant's name and in possession of Clyde Windgate.  According to the sign out log Clyde was in the MEB building.  Appellant went to obtain the equipment and tools from Clyde Windgate in order that the proper equipment is in its place for another assignment.

19.    The custom and practice regarding the maintenance shop were for its employees to be productive and not inactive, unoccupied or loiter in the maintenance shop with nothing to do.  This policy was stated by Darryl Keeter and Steve Vicknair and the policy of LSUMC.

20.    Plaintiff was obtaining tools from Mr. Windgate in order to perform a job at another location or to place them in the proper place.  Obtaining instruments for another job cite does not impair the efficiency of the operation, and therefore,

the suspension was pretext.

21.     Article 10, Section 8 (A) of the Louisiana Constitution provides:

> No person who has gained permanent status in the classified state or city service shall be subject to disciplinary action except for cause expressed in writing.  A classified employee shall have a right to appeal... (to the Civil Service Commission).

22.     According to *Walters v. Department of Police of New Orleans*, 454 So. 2d 106 (La. 1984), Civil Service Commission has a duty to decide independently from facts presented whether the Appointing Authority has good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction.  "Cause" has been interpreted to include conduct prejudicial to the public service in which the employee in question is engaged.  The burden of proving legal cause for disciplinary action before the Civil Service Commission is on the appointing authority.   The Supreme Court pointed out in *Leggett v. Northwestern State College*, 140 So 2d 5 (1962), that there must be a real and substantial relation between the conduct of the employee and the efficient operation of the public service; otherwise legal cause is not present, and any disciplinary action by the commission is arbitrary and capricious.  See:    According to  *Saacks v. City of New Orleans Police Department*, 687 So. 2d 432 (La. App. 4th Circuit 1996) writ denied Certiorari denied and *Howard v. Housing Authority of New Orleans*, 457 So. 2d 834, (App. 1st Cir. 1984), Legal cause

for disciplinary action against public employee exists when conduct complained of impairs efficiency of the public service and bears real and substantial relation to efficient and orderly operation of public service in which the employee is engaged. According to *Saacks*, to demonstrate legal cause for disciplinary action the appointing authority must prove by preponderance of evidence the occurrence of complained of activity, prove that the conduct complained of impaired the efficiency of public service and that it bears real and substantial relationship to efficient operation of public service.

23. The evidence was insufficient to support a finding that plaintiff violated the department policy because it is undisputed that appellant was attempting to get tools and instruments to improve the efficiency of the service. Plaintiff was doing what he thought his supervisor wanted him to do.

24. The alleged misconduct did not bear a real and substantial relationship to the efficient operation of public service.

25. Irregular policy and procedures and implementing irregular punishment gives rise to an inference of discrimination and retaliatory motive. Defendants were retaliating against plaintiff in violation of the U.S. Civil Rights Act.

## CAUSE OF ACTIONS NUMBER 2

26. Plaintiff reurges, reiterates and incorporates the allegations in Paragraphs I through 25, and alleges that:

27. Plaintiff asserts that the defendants, through its employees were and are engaging in a campaign to build a false

and contrived record or history of allegations against him in order to justify termination from employment.

28.   Plaintiff asserts that he is being systemically discriminated and retaliated for reporting a illegal employment practice.

29,   Plaintiff states that several white employees slept on the job without being punished, leaft the job cite, take unauthorized lunch breaks and unauthorized breaks and were not disciplined.  Some white employees are would take tiles from the building for there personal use.  John Gazave--white employees have cost the appointing authority several thousands of dollars in repair and mishandled and botched jobs, however, the appointing authority failed to disciple those White employees.

30   14th Amendment of the U.S. Constitution provides that:

>   No State . . .  **shall not deny to any person within its jurisdiction the equal protection of the law**.

The preamble to the Louisiana Constitution states the following

>   "The Louisiana Constitution set forth a Louisiana Declaration of Individual Rights (Bill of Rights). The legislature intent in 1997 of the Louisiana Constitution provides: Whereas, the preamble and the Declaration of Rights, as set forth in Article 1 of the Constitution of Louisiana, establish certain guaranties and protections for individual rights and Liberties . . . , the citizens of Louisiana have chosen **a higher standard of individual liberty** than that afforded by the Constitution of the United States of America . . . "

The legislative intent states that Louisiana citizens have a higher standard of **individual** liberties-- even more than the U.S. Constitution.

Article I, Section 3 of the Louisiana Constitution:

> No person shall be denied the equal protection of the laws . . .

31.  Since the defendants did not have just cause to discipline plaintiff, and the defendants treated white employees better than plaintiff and employees of his race, the defendants have different motives and intent to discriminate and retaliate against plaintiff.

32.  Plaintiff asserts that defendants violated the equal protection clause of the United State Constitution and the Louisiana Equal Protection clause by discriminating and retaliating against plaintiff and in turn violate 42 U.S.C. Section 1983 et seq.

33.  Plaintiff states that a series of harassments and retaliations constitute a "continuing discriminatory violation theory" which is actionable.  According to *United Airline v. Evans*, 431 U.S. 533 (1977), a continuing violation theory exists however the plaintiff must show a series of related acts.  It is essential that plaintiff demonstrate a nexus or interrelatedness, between the past event and the present event.  The continuing violation is a common theme that clearly unites the past incident into an ongoing pattern.  *Reid v. Department of Commerce*, EEOC Request number 05970705 (1999), *McGiven v. United States Postal Service*, EEOC Request number 05901150 (1990), *Scott v. Clayton*, 469 F. Supp. 22( 1978), *Jarmin v. Department of Navy*, EEOC Number 05930019( 1993).

34. Plaintiff states that the appointing authority has subjected him to a series of harassments which made his job so hostile and so intolerable that it is forcing him to consider resigning. Darryl Keeter assigns appellant more work orders than any other electrician.

35. Plaintiff reported to Darryl Keeter (supervisor) that John Gazave (White Co-worker) was harassing appellant by sending appellant back and forth to cut covers for the wiring trough which could have been obtain all at once.

36. Plaintiff along with other civil servants filed with the EEOC a discrimination and retaliation complaints against the defendants.

37. On October 17, 2000, Plaintiff was reprimanded for failure to sign out for work location. According to the log, several white employees failed to sign out for work location. This indicates different and unequal treatment

38. On October 18, 2000, plaintiff filed a grievance alleging racial discrimination concerning John Gazave(White employee), a co-worker, who was following appellant around and checking appellant's work. Since October 2000, the defendants has engaged in a campaign to build a false and contrived record or history of allegations against plaintiff with the end result of plaintiff being terminated from employment.

39. On December 14, 2000, plaintiff was issued a written reprimand and suspension for an incident that happened November 8, 2000. Plaintiff was blamed and made responsible for a botched job he was not in charge of. Supervisor Darryl Keeter

gave a job and work order to Ray Marigny.  Ray Marigny was assigned to install outlets and lights in the power plant of the Clinical Science Research building, when a wire shorted and tripped the breaker in the main switch gear.  When the breaker tripped the building lost power, which caused the emergency generator to start and return power to the building.  The above action constituted poor work performance and created a safety hazard.  Plaintiff was scheduled to leave work early that day and was assigned to assist Ray Marigny until plaintiff was scheduled to leave work for 12:00 p.m. Although the job was the responsibility of Ray Marigny, plaintiff was disciplined and Ray Marigny was not disciplined.  In comparison, John Gazave (White employee) caused thousands upon thousands of dollars of damage and waste. If the work of John Gazava was not discovered, it would  have endangered hundreds of lives.  John was never reprimanded, disciplined or written up.  Management keep this safety hazard and poor performance quite.

40.   Plaintiff states that the defendant retaliated against plaintiff.

41.   On November 11, 2000, plaintiff was single out and punished for not signing out or in the sign out log.  Several White employees failed to sign in or out, and was not disciplined.  This was unequal treatment which is in violation of the Anti-discrimination and retaliation provisions of the U.S. Civil Right Act and in turn violations of 42 U.S.C. Section 1983.

42.   On February 2, 2001, plaintiff filed with the Equal Employment Opportunity Commission the above discriminatory and

retaliatory incidents from 10-16-00 to 11-15-00.

43. On April 24, 2001, the defendant decided not to take the disciplinary action against appellant for the November 8, 2000, incident. The November 8, 2000, incident proves that the defendants were contriving and building a false record or history to harass plaintiff and to force plaintiff to consider resigning.

44. Plaintiff did not wish to institute legal action against his employer but was forced to obtain the service of an attorney and file this complaint.

45. Plaintiff is being forced to quit under conditions that are and were intolerable. Because he was being retaliated against for reporting an illegal employment act (discrimination), appellant is thinking of resigning because he was and is being harassed by the defendants.

46. Plaintiff further avers that the defendants placed false and damaging information about appellant's professional character and reputation into his personnel record and uttered these false and damaging information to appellant's co-workers. Plaintiff states that this action economically impairs plaintiff from obtaining another job in his field of expertise. This is considered defamation of professional character and reputation, and an illegal employment practice. Plaintiff asserts that this action is an adverse and illegal employment practices of retaliation.

47. Plaintiff aver that he relied to his detriment on the promise that the appointed authority would provide a job and a good working environment. Appellant states that the defendants breached its duty of good faith and fair dealing and created a hostile work environment as well.

48. These actions against plaintiff is a deviation to company policy and deviation of standard operating procedure of LSUMC. Going against or deviating from a standard operating policy gives rise to discriminatory and retaliatory intent.

49. Plaintiff states that the defendants has historically and statistically terminated and suspended African American employees at a higher rate than White employees. This gives rise to an inference of discrimination.

50. Plaintiff states that the defendants has statistically promoted White employees at a higher rate that African American employees. This give rise to an inference of discrimination.

51. Plaintiff states that the defendants has a policy of preferential treatment in favor of White employee as compare to African American employees.   Respectfully submitted,

52. As a result of defendant's discriminatory and retaliatory actions and observing the other racially disparate conditions within Medical Center of Louisiana at New Orleans, on December 14, 2001, plaintiff filed a complaint of discrimination with EEOC alleging inter alia, that the discrimination involved discrimination and retaliation and other unlawful discriminatory working conditions.

53. Plaintiff alleges that he has exhausted all available administrative remedies with reference to this action.

54. Plaintiff believes that the evidence adduced in the investigation and hearing of his complaint, together with such additional evidence as he will develop through discovery and present at trial herein, will show that the defendant(s) have discriminated and continue to discriminate/retaliate against him. As a result of said discrimination/retaliation, plaintiff has suffered the effects of discrimination on account of his race, and color.

55. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 56 of this Complaint with the same force and effect as if set forth herein.

56. Plaintiff asserts that defendants has retaliated against him for submitting a complaint with the EEOC. Defendant through a series of harassments is forced plaintiff to resign his position. Plaintiff asserts that the defendant's through a series of harassments, constructively discharged plaintiff on the basis of his having complained of discrimination, in violation of Title VII.

57. Plaintiff asserts the defendant defamed his character and slandered his good name by circulating false and malicious information thorough LSUMC at New Orleans.

58. Plaintiff suffered extreme emotional distress and severe anxiety due to the defendants including Mr. Darryl Keeter's retaliatory actions.

**CONDITIONS PRECEDENT**

59. Plaintiff filed a request with the Equal Employment Opportunity Commission (herein referred to as "EEOC"), Regional Office, EEOC in New Orleans, Louisiana to assume jurisdiction and to investigate his charge against the defendant(s).

60. On December 17, 2001, plaintiff received a copy of right to sue letter from the EEOC(Date December 14, 2001). A copy of said written decision is annexed hereto as Exhibit A.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays:

1. That the Court finds and declares that he has suffered from acts of racial discrimination/retaliation at the hands of defendants, their agents, servants, or employees;

2. That defendant be directed to pay plaintiff compensatory and punitive damages for the injuries suffered as a result of defendant's violations of Title VII, and be directed to pay plaintiff compensatory and punitive damages for the injuries suffered as a result of defendant's tortious conduct;

3. That the Court orders such further equitable and injunctive relief as it deems appropriate and necessary to correct the conditions of discrimination complained of herein; and

4. That Defendant pays Plaintiff's cost of this suit, together with reasonable attorney's fees.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff hereby demands a trial by jury in this action.

Respectfully Submitted,

*[signature]*

Merlin S. McCormick
5035 St. Anthony Ave.
New Orleans, La. 70122